Case 7:19-cv-00339 Document 31 Filed on 12/02/20 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
December 02, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | |
| § CIVIL ACTION NO. 7:19-cv-00339 | |
| 117.543 ACRES OF LAND, more or less, § | |
| in HIDALGO COUNTY, TEXAS; and § | |
| JOSE RAMIREZ, JR., § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

The Court now considers the "United States' Amended Brief on Just Compensation"[1] and "Defendant Jose Ramirez Jr.'s Supplemental Brief for Just and Adequate Compensation."[2] Both briefs are filed pursuant to Court order and supersede any earlier briefs.[3] After considering the briefs, record, and relevant authorities, the Court holds that **$100.00** is just compensation for the taking in this case.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is an eminent domain case commenced under the Declaration of Taking Act[4] concerning Tract RGV-MCS-1311, which is 117.543 acres of land in Hidalgo County, Texas, as more particularly described in the United States' schedules C and D (the "Subject Property").[5] Plaintiff United States initiated this case on September 27, 2019, with its complaint, declaration,

---

[1] Dkt. No. 29.
[2] Dkt. No. 30.
[3] Dkt. No. 26.
[4] *See* 40 U.S.C. §§ 3111–18.
[5] *See* Dkt. No. 1-1 at 5–8.

and notice of condemnation.[6] The United States represents that Defendant Jose Ramirez, Jr. is the only person "who have or claim an interest in the property condemned."[7] The United States seeks in this case a:

> temporary, assignable easement beginning on the date possession is granted to the United States and ending 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule C to survey, make borings, and conduct other investigatory work for the purposes described in Schedule B and to access adjacent lands; including the right to trim or remove any vegetative or structural obstacles that interfere with said work; reserving to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired; subject to minerals and rights appurtenant thereto, and to existing easements for public roads and highways, public utilities, railroads and pipelines.[8]

The United States intends to use the easement "to conduct surveying, testing, and other investigatory work needed to plan the proposed construction of roads, fencing, vehicle barriers, security lighting, cameras, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas."[9] The United States deposited $100 in estimated just compensation for the taking.[10] The Court held an initial pretrial conference and hearing on the United States' motion for immediate possession[11] on December 17, 2019.[12] At the hearing and in a subsequent order, the Court granted the United States immediate possession of the requested easement over the Subject Property.[13]

---

[6] Dkt. Nos. 1–3.
[7] Dkt. No. 1-1 at 14; *see* FED. R. CIV. P. 71.1(c)(3) ("[B]efore any hearing on compensation, the plaintiff must add as defendants all those persons who have or claim an interest and whose names have become known or can be found by a reasonably diligent search of the records, considering both the property's character and value and the interests to be acquired.").
[8] Dkt. No. 1-1 at 10.
[9] *Id.* at 4.
[10] Dkt. No. 7.
[11] Dkt. No. 9.
[12] *See* Minute Entry (Dec. 17, 2019).
[13] *See id.*; Dkt. No. 17.

At the Court's March 10, 2020 status conference, the parties sought an evidentiary hearing on the issue of just compensation.[14] The Court granted the request and set the hearing in May 2020.[15] After numerous continuances because of the COVID-19 pandemic,[16] the Court instructed the parties to consider alternative means of evidentiary submission.[17] In October 2020, the parties jointly moved for the Court to determine just compensation on the briefs,[18] which the Court granted, holding that the parties shall file briefs by November 20th and the Court "will consider a brief submitted pursuant to [that] order to supersede any earlier brief."[19] Both parties timely submitted briefs,[20] so the issue of just compensation is ripe for determination. The Court turns to the analysis.

II. DISCUSSION

    a. Legal Standard

Under the Fifth Amendment to the United States Constitution, private property shall not be taken "for public use, without just compensation."[21] Just compensation is to be just to the landowner and to the public which must pay for the condemnation by eminent domain.[22] "Just compensation . . . means in most cases the fair market value of the property on the date it is appropriated."[23] "[T]he underlying principle is that the dispossessed owner 'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole

---

[14] *See* Minute Entry (Mar. 10, 2020).
[15] Dkt. No. 20.
[16] *See* Dkt. Nos. 22, 24.
[17] Dkt. No. 24.
[18] Dkt. No. 25.
[19] Dkt. No. 26.
[20] Dkt. Nos. 29–30.
[21] U.S. CONST. amend. V (the Takings Clause).
[22] *Bauman v. Ross*, 167 U.S. 548, 574 (1897) (quoting *Searl v. Sch. Dist. No. 2*, 133 U.S. 553, 562 (1890) (Fuller, C.J.)).
[23] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984).

but is not entitled to more.'"[24] "Under this standard [of fair market value], the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking."[25] "[I]n general, comparable sales constitute the best evidence of market value . . . the more comparable a sale is, the more probative it will be of the fair market value of the condemned property."[26] A comparable sale is defined as a sale "from a willing seller to a willing buyer of similar property in the vicinity of the taking at or about the same time as the taking."[27] Evidence of fair market value can come from evidence of comparable sales and from expert testimony as to the value of the subject property.[28]

"In determining the market value, this Court must look not only at the present use of the property, but also at the highest and best use for which the property is adaptable and needed."[29] "Ordinarily, the highest and best use for property sought to be condemned is the use to which it is subjected at the time of the taking. This is true because economic demands normally result in an owner's putting his land to the most advantageous use."[30] When a condemnee[31] attempts to claim that the highest and best use for the property taken is something other than what the property is currently used for, the Fifth Circuit has held that the burden is on the condemnee to produce credible evidence that, at the time of taking, the use claimed was "practicable" and that

---

[24] *United States v. 320.0 Acres of Land in Monroe Cnty.*, 605 F.2d 762, 780 (5th Cir. 1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).
[25] *Id.* (internal quotation marks and quotation omitted); *accord United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted) ("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking contemporaneously paid in money."); 5th Cir. Pattern Civ. Jury Instruction 13.3 (2014) (internal quotation marks omitted) ("Fair market value means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both sides are fully informed about all the advantages and disadvantages of the property, and neither side is acting under any compulsion to buy or sell.").
[26] *320.0 Acres of Land*, 605 F.2d at 798.
[27] *United States v. 8.41 Acres of Land in Orange Cnty.*, 680 F.2d 388, 395 (5th Cir. 1982) (citing *United States v. Trout*, 386 F.2d 216, 222–23 (5th Cir. 1967)).
[28] *320.0 Acres of Land*, 605 F.2d at 798 & n.64.
[29] *8.41 Acres of Land*, 680 F.2d at 394; *see United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.").
[30] *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962).
[31] *See Condemnee*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("One whose property is expropriated for public use or taken by a public-works project.").

"there was a reasonable likelihood that [the property] would be so used in the reasonably near future."[32] Evidence of highest and best use that is not credible, for example an assertion that residential development is the highest and best use when the property in question is next to an airfield and has poor access and stagnant population growth, should be rejected.[33]

When the taking is temporary, "the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period,"[34] or in other words "determine the figure which would compensate [the condemnee] for the loss it suffered by being deprived of this property for this period of time."[35] Market rental value is generally the appropriate measure of compensation for a temporary taking.[36] However, even if a taking is temporary, it may effect a complete deprivation of profitable use of property.[37]

"Considerations that may not reasonably be held to affect market value are excluded."[38] "In making [a just compensation] estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining," but ostensible events affecting value that are speculative or not shown to be reasonably probable are excluded from the ascertainment of value.[39] The considerations that are excluded from just compensation include special or sentimental value to the condemnee, the

---

[32] *320.0 Acres of Land*, 605 F.2d at 814; *accord United States v. 62.50 Acres of Land in Jefferson Par.*, 953 F.2d 886, 890 (5th Cir. 1992) ("Potential uses must overcome a presumption in favor of the existing use. A landowner can overcome this presumption only by showing a reasonable probability that the land is adaptable and needed for the potential use in the near future.").
[33] *United States v. 158.24 Acres of Land, More or Less, in Bee Cnty.*, 515 F.2d 230, 233 (5th Cir. 1975).
[34] *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304, 319 (1987).
[35] *United States v. Michoud Indus. Facilities*, 322 F.2d 698, 708 (5th Cir. 1963).
[36] *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949).
[37] *See id.* at 14 (discussing that the condemnee's investment "remained bound up in the reversion of the property" so the United States "could no more completely have appropriated the [condemnee's] opportunity to profit" than by putting the condemnee completely out of business for a period of time).
[38] *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted).
[39] *Olson v. United States*, 292 U.S. 246, 257 (1934).

change in value of separate tracts that are affected by the taking,[40] appraisal and attorneys' fees, loss of profits, damage to goodwill, and the expense of relocation or other consequential losses.[41] However, "the opinion testimony of a landowner as to the value of his land is admissible without further qualification. Such testimony is admitted because of the presumption of special knowledge that arises out of ownership of the land."[42] Although the Court will not accept speculative "value to me" testimony from a landowner, so long as the landowner's opinion has a rational foundation and is not contradicted by the landowner's testimony, it is probative of the market value of the land.[43] The rule is that if "a proffered potential use is not reasonably practicable or probable, so that no reasonably minded trier of fact faithfully applying the law could find that it represents an element of fair market value," the evidence will not be considered.[44] "The burden of establishing the value of the land sought to be condemned [rests] with the landowner."[45] If the landowner fails to establish that just compensation is higher than the United States' estimate, the Court may rely exclusively on the United States' evidence.[46]

### b. Analysis

#### 1. *Evidence Submitted by Defendant Landowner*

---

[40] *See United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Par., La.*, 616 F.2d 762, 772 (5th Cir. 1980) (holding that a landowner is entitled only to recover for the actual condemnation and not for any theory of damages to remaining land or damages that will be incurred in the future).

[41] *Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 247–48 (3d Cir. 2019) (collecting United States Supreme Court cases); *see United States v. Gen. Motors Corp.*, 323 U.S. 373, 379 (1945) ("The rule in such a case is that compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign.").

[42] *United States v. 329.73 Acres of Land in Grenada & Yalobusha Cntys.*, 666 F.2d 281, 284 (5th Cir. 1982) (citing *United States v. 3,698.63 Acres of Land*, 416 F.2d 65, 67 (8th Cir. 1966) & *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966)).

[43] *See Sowards*, 370 F.2d at 92; *United States v. 79.20 Acres*, 710 F.2d 1352, 1357 (8th Cir. 1983) (citing *3,698.63 Acres*, 416 F.2d at 66-67).

[44] *320.0 Acres of Land*, 605 F.2d at 818.

[45] *United States v. 62.50 Acres of Land in Jefferson Par.*, 953 F.2d at 890 (5th Cir. 1992) (citing *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273–76 (1943)).

[46] *United States v. 8.41 Acres of Land in Orange Cnty.*, 680 F.2d 388, 395 (5th Cir. 1982).

Defendant landowner Jose Ramirez Jr. argues that "[j]ust and adequate compensation for the instant easement is no less than $7,500 because this is the minimum fair market value of the easement."[47] Defendant points chiefly to two pieces of evidence: the declarations of Defendant and his son.[48] Defendant explains in a declaration pursuant to 28 U.S.C. § 1746 that he entered a still-active oil and gas lease in 1976 permitting underground pipes, a pump jack, and other machinery for $1,000 per year, but that he would not enter such a lease now for less than $5,000 per year.[49] Because Defendant must adjust his "cattle operation" and his existing obligations to the oil and gas lease when the United States' representatives enter the property, he is "asking the government to compensate [him] $7,500 for the one-year easement they have on [his] land."[50] Defendant's son Jose Ramirez, III submits a similar declaration, explaining that "we have had to be ready to make accommodations for the government at a moment's notice."[51] The Court pauses here to remind Plaintiff United States of its obligations pursuant to Court order to "provide Defendant 72-hour notice before entering Tract RGV-MCS-1311."[52] Jose Ramirez, III continues, "we must put [protections] in place to ensure our cattle, and our business, is not harmed by this surveying and surveyors" and that all cattle operations must cease while "we wait for hours for the surveyors to come."[53] Jose Ramirez, III elaborates on the aggravation caused by the existing easement and adds that "[w]e are also generally concerned about the oil and gas company cancelling our lease because of how cumbersome this process has been."[54] However,

---

[47] Dkt. No. 30 at 3, ¶ 13.
[48] Dkt. No. 30 at 6, ¶ 18.
[49] Dkt. No. 19-1 at 4, ¶¶ 10–12.
[50] *Id.* ¶¶ 13–14.
[51] Dkt. No. 30-1 at 2, ¶ 4.
[52] Dkt. No. 20 at 1.
[53] Dkt. No. 30-1 at 2, ¶ 4.
[54] *Id.* at 3–4, ¶¶ 6–11.

the lease has evidently not been cancelled in the 11 months since the easement has been in place and the United States has had access to it.[55]

### 2. *Evidence Submitted by Plaintiff United States*

The United States is relying on very similar if not identical arguments and evidence from previous cases before this Court. In July of this year, the Court noted the United States' evidence here was already "familiar to the Court."[56] Specifically, the United States relies on the declaration of Roger C. Jennings, a "professionally licensed real estate appraiser [who works] for the U.S. Army Corps of Engineers."[57]

> Mr. Jennings declares that he has significant appraisal experience, including in the Rio Grande Valley where the Subject Property is located, and that in his personal judgment and in the judgment of his associates and as reflected by appraisals completed by Mr. Jennings's associates, temporary rights of entry have no measurable market value especially where the easement "does not change the uses for which the property is legally available, has no impact on any potential physically possible use of the property, and does not impair the use or sale of the property for any of the available uses." The United States relies on this declaration for its position that nominal compensation of $ 100 is just compensation, and is even more generous than $1 that would also be just compensation, for the easement at issue.[58]

"The Court previously accepted this evidence as probative expert evidence of just compensation, and does so again today."[59] The United States *again* lazily relies on a 2015 Western District of Virginia case[60] for the proposition that there is no compensable value in a temporary right of entry, which the Court finds unpersuasive for the same reasons already stated.[61] This Court has

---

[55] *See* Dkt. No. 30 at 1, ¶ 1.
[56] *United States v. 8.903 Acres of Land*, No. 7:19-cv-52, 2020 U.S. Dist. LEXIS 134134, at *10 (S.D. Tex. July 29, 2020) (Alvarez, J.).
[57] Dkt. No. 29-2 at 1, ¶ 1.
[58] *8.903 Acres of Land*, 2020 U.S. Dist. LEXIS 134134, at *11 (quoting *United States v. 30.00 Acres of Land*, No. 7:19-cv-234, 2020 U.S. Dist. LEXIS 100770, at *11 (S.D. Tex. June 9, 2020) (Alvarez, J.)); Dkt. No. 29-2 at 1–5, ¶¶ 1–11.
[59] *8.903 Acres of Land*, 2020 U.S. Dist. LEXIS 134134, at *11 (footnote omitted).
[60] Dkt. No. 29 at 8, ¶ 15.
[61] *8.903 Acres of Land*, 2020 U.S. Dist. LEXIS 134134, at *11–12 (citing *Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 689 (W.D. Va. 2015)).

already held that certain landowner evidence "pushes back against Mr. Jennings' contention that temporary rights of entry have no measurable market value at all."[62]

### 3. Court's Analysis of Just Compensation

To rebut the United States' estimation of just compensation, Defendant repeatedly points to the work and aggravation he must endure to accommodate the easement over his land.[63] However, Defendant never ties any of these considerations to the fair market value of the land or easement. Defendant points to one 1945 case in which the United States sought to occupy a portion of a building and displace the tenant who held that portion under a long term lease.[64] The Supreme Court held that "[s]ome of the elements which would certainly and directly affect the market price agreed upon by a tenant and a sublessee in such an extraordinary and unusual transaction would be the reasonable cost of moving out the property stored and preparing the space for occupancy by the subtenant," but not as items of damages and instead as relevant evidence indicative of the market price "which would be asked and paid for such temporary occupancy of the building then in use under a long term lease."[65] The Supreme Court held that such evidence should be admitted and considered.[66]

In this case, even if the Court considered the accommodations Defendant must make for the dominant easement over Defendant's servient estate,[67] Defendant offers no particular evidence of the *costs* involved in making such accommodations or how they affect market value.[68] The Court is left to guess as to the affect Defendant's accommodations have on the

---

[62] *United States v. 30.00 Acres of Land*, No. 7:19-cv-270, 2020 U.S. Dist. LEXIS 127817, at *13 (S.D. Tex. July 21, 2020) (Alvarez, J.).
[63] *See* Dkt. No. 30 at 7–8, ¶¶ 22–24; *id.* at 10–11, ¶ 29.
[64] *United States v. Gen. Motors Corp.*, 323 U.S. 373, 374–75 (1945).
[65] *Id.* at 383, *cited in* Dkt. No. 30 at 7, ¶ 22.
[66] *Id.*
[67] *See* Dkt. No. 30 at 6, ¶ 20 (discussing that the servient estate holder "is beholden to the needs of the easement holder").
[68] *See* Dkt. Nos. 19-1, 30-1.

market value of the land. Although the Supreme Court held that courts must receive and consider evidence regarding accommodations as affecting market price, the Court also held that "[p]roof of such costs as affecting market value is to be distinguished from proof of value peculiar to the respondent, or the value of good-will or of injury to the business of the respondent which, in this case, as in the case of the condemnation of a fee, must be excluded from the reckoning."[69] Defendant offers only the latter type of evidence in the form of injury to his cattle operation:

> For example, I will have to reevaluate the grazing rotations I currently have and will have to make sure my cattle have access to water. Even then, because the government has the right to access any part of my entire tract of land, I also have to have someone available in case I have to move the cattle if the surveyors want to access the section of land where the cattle are present.[70]

The Court holds that these are not costs and undertakings reasonably affecting market value, and even if they were, Defendant does not show the impact of the accommodations on the market value and the Court cannot guess without the aid of expert evidence or comparable sales as to the effect on market value of the Subject Property.[71]

Defendant also argues that he should be compensated for the diminution in value resulting from the taking, which he values at no less than $7,500.[72] Defendant reasons that the fair market value for the diminution in value for the access easement is no less than $7,500.[73] This is circular reasoning because the conclusion of fair market value (the thing to be proved) is assumed in the premise that the diminution of value is worth no less than $7,500.[74] The Court rejects this argument.

---

[69] *Gen. Motors Corp.*, 323 U.S. at 383.
[70] Dkt. No. 19-1 at 3, ¶ 8.
[71] *See United States v. 320.0 Acres of Land in Monroe Cnty.*, 605 F.2d 762, 798 & n.64 (5th Cir. 1979) (discussing probative evidence of market value).
[72] Dkt. No. 30 at 11–12, ¶ 30 (quoting *Boyer v. United States*, 135 Fed. Cl. 121, 127 (2017)).
[73] *Id.* at 12, ¶ 32.
[74] *See Petitio principii*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Begging the question; that is, a logical fallacy wherein what is to be proved is implicitly presumed as true in the premise; an argument whose premise is also the conclusion.").

Defendant's core argument regarding market value appears to be the oil and gas lease on the Subject Property.[75] Defendant argues that "[t]he lease is comparable to the easement at issue in this case because, as a willing seller, the fixed $1,000 annual payment is in exchange for access to the property for generally limited amounts of time to conduct activities on the pump jack and other machinery within it."[76] Both Defendant and his son attest to the existence of the same oil and gas lease.[77] In a recent case, this Court held a $250 hunting and fishing lease sufficiently comparable to the United States' access easement because both interests "grant non-exclusive access to the land for twelve months, giving both the hunting and fishing lessee and the United States virtually unfettered access to the property."[78]

However, the Court rejects the argument that Defendant's oil and gas lease is a comparable sale that offers probative evidence of the Subject Property's *surface* market value. Defendant's oil and gas lease, and Plaintiff's surface access easement, fundamentally differ in kind. A "surface interest" is "[e]very right in real property *other than the mineral interest*."[79] A mineral interest, as distinguished from a surface interest in real property, is "[t]he right to search for, develop, and remove minerals from land or to receive a royalty based on the production of minerals."[80] A landowner can alienate or lease his or her surface rights and subsurface rights separately.[81] Importantly, particular lands may have significantly different market values for their surface and subsurface interests. For example, a piece of land overlooking a fjord with a fantastic vista may be ideal for an expensive residential home or lavish commercial hotel, but

---

[75] *See* Dkt. No. 30 at 9, ¶ 27.
[76] *Id.*
[77] *See* Dkt. No. 19-1 at 4, ¶¶ 10–12; Dkt. No. 30-1 at 4, ¶ 11.
[78] *United States v. 30.00 Acres of Land*, No. 7:19-cv-270, 2020 U.S. Dist. LEXIS 127817, at *15 (S.D. Tex. July 21, 2020) (Alvarez, J.).
[79] *Surface interest*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[80] *Mineral interest*, BLACK'S LAW DICTIONARY (11th ed. 2019).
[81] *See Subsurface interest*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. A landowner's right to the minerals and water below the property. 2. A similar right held by another through grant by, or purchase from, a landowner.").

with no subsurface minerals to speak of, would have drastically different surface and subsurface market values. Conversely, a parcel of land in a desolate tundra, but with a significant vein of valuable ore or large deposit of oil below its surface, would also have drastically different surface and subsurface market values. The United States' easement in this case acknowledges the difference; the easement is "subject to minerals and rights appurtenant thereto."[82] Defendant also acknowledges a substantial difference between the mineral interest granted by the oil and gas lease and the surface easement that does not provide for the installation of permanent structures: the Subject Property "has underground pipes and other features for the production of the oil and gas, including an operating pump jack and other machinery."[83] Defendant fails to acknowledge the critical distinction between the subsurface lease and surface interest at issue here and how their market values may be impacted separately, and does not point to any jurisprudence suggesting that a mineral interest can be applied to the determination of the value of a temporary surface access easement.[84] In sum, the Court holds that the *mineral* interest granted by an oil and gas lease on the Subject Property is not a comparable sale to the *surface* interest granted by the United States' easement.

    The Court holds that Defendant has failed to rebut the United States' evidence that nominal compensation of $100 is appropriate. "The landowners had an opportunity to prove the market value of the tracts was higher than established by the Government, but failed to meet this burden . . . . Accordingly, it is unnecessary to conduct additional hearings on determining the fair market value of the parcels."[85] "In the absence of any evidence or testimony supporting Defendant's argument that the United States' estimated valuation was too low, the Court will

---

[82] Dkt. No. 1-1 at 10.
[83] Dkt. No. 19-1 at 4, ¶ 12.
[84] *See* Dkt. No. 30 at 9–10, ¶¶ 27–28.
[85] *United States v. 8.41 Acres of Land in Orange Cnty.*, 680 F.2d 388, 395 (5th Cir. 1982).

follow its prior precedent and hold that Roger Jennings's testimony is sufficient substantiation of the $100 nominal compensation."[86]

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court holds that **$100.00** is just compensation for the 12-month easement granted in this case. The Court **ORDERS** the Clerk of the Court to disburse the $100 on deposit in the registry of the Court,[87] together with any interest earned while on deposit,[88] payable to Jose Ramirez, Jr., the Defendant in this case. In the event that any other party is ultimately determined by a court of competent jurisdiction to have any right to receive compensation for the estate taken in the Subject Property, Defendant shall refund into the registry of the Court the compensation distributed herein, or such part thereof as the Court may direct. This case will terminate upon entry of the final judgment.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 2nd day of December 2020.

_____
Micaela Alvarez
United States District Judge

---

[86] *United States v. 8.903 Acres of Land*, No. 7:19-cv-00052, 2020 U.S. Dist. LEXIS 134134, at *15 (S.D. Tex. July 29, 2020) (Alvarez, J.).
[87] *See* Dkt. No. 7.
[88] *See* 40 U.S.C. § 3116.